UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

THERESA ZUMBUSCH,

        Plaintiff,

    v.

WAL-MART STORES, INC., a Delaware Corp.,

        Defendant.

No. 3:12-cv-837-ST

OPINION AND ORDER

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Theresa Zumbusch ("Zumbusch"), filed a Complaint in the Circuit Court of the State of Oregon for the County of Multnomah alleging one claim for negligence against defendant, Wal-Mart Stores, Inc. ("Wal-Mart"), arising from injuries that she suffered on July 28, 2010, when she slipped and fell. Pursuant to 28 USC § 1441(a), Wal-Mart timely removed the case to this court based on diversity jurisdiction pursuant to 28 USC § 1332(a)(1). Zumbusch then filed a First Amended Complaint alleging the same claim for negligence (docket #8).

All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c) (docket #13).

1 – OPINION AND ORDER

Pursuant to FRCP 56(c), Wal-Mart has filed a Motion for Summary Judgment (docket #15). For the reasons set forth below, that motion is DENIED.

## **STANDARDS**

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law." The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial." *Id* at 324, citing FRCP 56(e). The court must "not weigh the evidence or determine the truth of the matter, but only determine[] whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted). A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert denied*, 493 US 809 (1989) (emphasis in original) (citation omitted). The substantive law governing a claim or defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F3d 1130, 1134 (9th Cir 2000) (citation omitted). The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party." *Farrakhan v. Gregoire*, 590 F3d 989, 1014 (9th Cir 2010), citing *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 255 (1986).

As both parties agree, Oregon law applies to this case based on diversity jurisdiction. *See, e.g., Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 709 F3d 872, 886 (9th Cir 2013).

///

///

///

**UNDISPUTED FACTS**

In July 2010, Zumbusch was employed by Mosaic as a "merchandiser." Zumbusch Depo.,[1] pp. 38-40. Her job was to go into retail stores and conduct product audits for various companies. *Id*. She paid a weekly visit to the Wal-Mart store in Portland to "monitor" the store's display of Hewlett-Packard products. *Id*, pp. 39-40. That audit included checking on the products on display, including printers and laptops, and determining whether ink supplies were in stock and were in old or new boxes. *Id*, p. 40. Zumbusch had been in the Wal-Mart store "[h]undreds of times" doing audits. *Id*, p. 44. When she finished auditing a display, she checked in with the manager of the electronics department who would sign her report. *Id*.

From time to time, Zumbusch also shopped while still in the store. Zumbusch Aff., (docket #24) ¶ 4. She usually shopped after finishing her audit, but sometimes before starting, she would grab a protein bar or something to drink, depending on the time of day. *Id.*

On Wednesday, July 28, 2010, at about 2:40 pm, Zumbusch entered the Wal-Mart store to perform a merchandise audit of Hewlett-Packard products. Zumbusch Depo., pp. 107-08, 127. She intended to observe the Hewlett-Packard display to determine what products needed to be updated or restocked. *Id*, pp. 38-39. However, shortly after entering the store, she slipped and fell. *Id*, p. 109.

While sitting on the floor, she saw, in "an area about 3 or 4 inches wide and 12 to 18 inches long," a "series of small puddles. Some were elongated, some were circular, some were the size of a quarter, some larger, some smaller." Zumbusch Aff., ¶ 1; *see also* Zumbusch Depo., pp. 117, 121-22. "Each small puddle appeared to be encircled by sandy dirt that had dried around the edges of each puddle." Zumbusch Aff., ¶ 2; *see also* Zumbusch Depo., pp. 122-23,

---

[1] Portions of Zumbusch's deposition and other witnesses' depositions are attached to the declarations of John Barhoum (docket #17) and Garry L. Kahn (docket #25). Citations to deposition testimony are to the page numbers of the deposition transcript.

3 – OPINION AND ORDER

126. The liquid appeared to be "clear water." Zumbusch Aff., ¶ 2. Because the rest of the floor was clean, "it appeared as though something on wheels had been pushed through it and, perhaps the dirt on wheels had tracked and spread the liquid away from the original spill." *Id*. However, she did not see any cart tracks. Zumbusch Depo., p. 126. Photographs were taken of the spill about 15-20 minutes after Zumbusch fell, but can no longer be located. Zumbusch Depo., pp. 111, 114; Cox Depo., pp. 22-24.

Other customers were in the store that day. Zumbusch Depo., p. 127. She did not see the liquid on the floor before she fell and does not know how it got there. *Id*, p. 110.

Wal-Mart's policy is for all employees to take responsibility for cleaning up spills. Burley Depo., pp. 15-17; Kahn Decl., Exs. 9, 13-20. It was customary for a maintenance worker to do a safety sweep with a 36" broom mop two or three times a day, which he currently does either at 11:00 am or 1:00 pm or both. Id, pp. 21-25. The "front-end" supervisor at the time, Tiffany Rainy, walked through that area maybe 20 times on an average day. Rainy Depo., pp. 5-6. It is the store's policy to regularly check the aisles for safety every hour. *Id*, p. 19.

## DISCUSSION

Wal-Mart makes two arguments in support of summary judgment. First, it argues that at the time of her injury, Zumbusch was a licensee, not an invitee, and that Wal-Mart did not breach its duty of care to a licensee. Second, even if Zumbusch was an invitee, Wal-Mart argues that she has submitted no evidence that Wal-Mart breached its duty of care to an invitee. After a careful review of the record and consideration of the arguments at the hearing, this court concludes that the evidence does not permit the inference that Zumbusch was a licensee, and instead permits only the conclusion that she was a business visitor invitee. This court further concludes that Zumbusch's testimony is sufficient to create a material issue of fact concerning

the length of time the substance in which Zumbusch slipped had been on the floor, precluding summary judgment in favor of Wal-Mart.

## I. Licensee v. Invitee

Whether Zumbusch was a licensee or invitee is relevant to the standard of care applicable to Wal-Mart. *Johnson v. Short*, 213 Or App 255, 260, 160 P3d 1004, 1008 (2007) (the duty of care that a landowner owes to a visitor entering its property depends on the visitor's status).

A "licensee" is a visitor "who comes upon the premises for her own purposes with the consent of the possessor." *Rich v. Tite-Knot Pine Mill*, 245 Or 185, 191, 421 P2d 370, 373 (1966) (citation omitted). Rather than extending an "invitation" to the visitor, the landowner merely gives "permission" for the visitor's presence. *Cassidy v. Bonham*, 196 Or App 481, 486, 102 P2d 748, 751 (2004). The possessor owes a duty to a licensee only "to put his premises in a safe condition" and has no duty "to disclose to the licensee any concealed, dangerous conditions of the premises of which he has knowledge. *Id* (citations omitted).

In contrast, an "invitee" is a visitor "who comes upon the premises for business which concerns the occupier, with the occupier's invitation, expressed or implied." *Rich*, 245 Or at 191-92, 421 P2d at 374. The occupier owes greater duties to the invitee "to warn of latent dangers" and also "to protect an invitee against those dangers in the condition of the premises of which he knows or should have known by the exercise of reasonable care." *Id* at 192, 421 P2d at 374 (citation omitted).

Oregon has adopted the following two tests for determining whether a person is an invitee:

> Under the first, the "economic advantage" test, anyone who comes on the premises for business that concerns the occupier, with the occupier's express or implied invitation, is an invitee. Under the second, the "invitation" test, a person is an invitee when the

>occupier, expressly or impliedly, leads the person to believe that it
>intended visitors to use the premises for the purpose that the person
>is pursuing and that the use was in accordance with the intention or
>design for which the premises were adapted or prepared.

*Walsh v. C & K Market, Inc.,* 171 Or App 536, 539, 16 P3d 1179, 1181 (2000) (citations omitted)

In this regard, Oregon refers to the RESTATEMENT (SECOND) OF TORTS, § 332 (1974), which uses "somewhat different terms." *Id* at 539, 16 P3d at 1181. That section provides as follows:

>(1) An invitee is either a public invitee or a business visitor.
>
>(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
>
>(3) A business visitor is a person who is invited to enter or remain on land for a purposes directly or indirectly connected with business dealing with the possessor of the land.

"A person whom section 1132 calls a 'public invitee' is, under the Oregon cases, an invitee under the invitation test, while a person whom section 1132 calls a 'business visitor' is an invitee under the economic advantage test." *Id* at 540, 16 P3d at 1182. A customer, who enters the store either to buy or browse provides the classic example of a "public invitee" because "store owners want to encourage as many people as possible to view their goods and become purchasers." *Id* at 542, 16 P3d at 1182. "The same conclusion follows under the economic advantage test" which does not require "that the visitor's purpose be to enter into immediate business dealing with the occupiers. Rather those who enter merely to look at the goods displayed are also business visitors." *Id*.

Wal-Mart asserts that because it did not invite Zumbusch to enter its store, she was there entirely on her own initiative and, thus, was a licensee. As such, Wal-Mart's duty of care to her

6 – OPINION AND ORDER

was to warn only of known, latent dangers.  It is undisputed that Wal-Mart had no knowledge that any water was on the floor where Zumbusch slipped and fell.  Therefore, if Zumbusch is a licensee, then Wal-Mart cannot be held liable to her as a matter of law.

Both parties agree that Oregon has not yet addressed the precise factual scenario presented by this case.  However, a similar situation arose in at least one other jurisdiction.  In *Miller v. Wal-Mart Stores, Inc.,* No. 01-CV-0709 (ND Okla, March 13, 2003), *aff'd*, 87 Fed Appx 139 (2004) (applying Arkansas law), the plaintiff was an employee of Rayovac and entered a Wal-Mart store for the purpose of "merchandising" Rayovac products by distributing coupons.  After completing her task, the plaintiff walked through the dairy aisle and fell on a clear liquid, causing her injuries.  The trial court ruled that the plaintiff was a licensee because she "was not induced to come onto the property for the business benefit of Wal-Mart." *Id* at *4.  Rather, she "went on the property for her own business purposes" of monitoring and merchandising Rayovac products.

*Miller* is somewhat compelling, given its strikingly similar facts.  However, this court finds no support for the conclusion that Zumbusch was a licensee under Oregon law.  In *Johnson*, some four years after *Miller*, the Oregon Court of Appeals found that a delivery driver who routinely delivered packages to a person's home for at least five years was a "business visitor invitee" under the "economic advantage" test.  The critical inquiry was "whether, at the time that plaintiff was injured, he [or she] was on defendants' premises pursuant to an express or implied invitation and whether his [or her] presence was of material benefit to defendants." *Id* at 264, 160 P3d at 1010.  The court found an implied invitation based on:

> plaintiff's regular provision of services beneficial to defendants
> over a period of years and defendants' ongoing acceptance,
> without objection or qualification, of those beneficial services

7 – OPINION AND ORDER

>which were, necessarily, dependent on plaintiff's entry onto defendant's property.

*Id.*

Wal-Mart argues that Zumbusch was a licensee because its store was "merely the location" of Zumbusch's audit on the day she was injured. It insists that Zumbusch entered the store for the benefit of Mosaic and Hewlett-Packard and entirely at her own initiative, unscheduled and unannounced. However, as in *Johnson*, this court cannot ignore the fact that Zumbusch regularly entered Wal-Mart to perform her audits which also materially benefitted Wal-Mart. The record reveals that Zumbusch entered Wal-Mart "hundreds" of times performing product audits, usually on a weekly basis. Wal-Mart was aware of her visits and signed off on her weekly reports. Those audits benefitted not only Mosaic and Hewlett-Packard, but also benefitted Wal-Mart by maximizing the sale of Hewlett-Packard products within the store. The services she performed of stocking and updating Hewlett Packard merchandise for sale by Wal-Mart fit well within the "business visitor invitee" by implied invitation described in *Johnson*:

>"[I]nvitee" status need not be express – it may also be implied – and the totality of the undisputed circumstances here establishes an implied invitation. . . .
>
>The totality of the circumstances here – the frequency and regularity of plaintiff's business-related visits over an extended period of time and defendants' unqualified acceptance of the material fruits of those visits – gave rise to an implied invitation.

*Id*.

Under *Johnson*, the only reasonable conclusion to be drawn from the evidence is that Zumbusch was a business visitor invitee at the time she entered Wal-Mart, slipped, and fell. Accordingly, to the extent it is premised upon the argument that Zumbusch was a licensee at the time of her injury, Wal-Mart's motion for summary judgment is denied.

///

## II. Length of Time

Wal-Mart also contends that Zumbusch's claim fails even if she is an invitee. A plaintiff who slips and falls on a foreign substance must prove:

> (1) that the substance was placed there by the occupant, *or* (2) that the occupant knew that the substance was there and failed to use reasonable diligence to remove it *or* (3) that the foreign substance had been there for so long that the occupant should, in the exercise of reasonable diligence, have discovered and removed it.

*Van Den Bron v. Fred Meyer, Inc.*, 86 Or App 329, 331, 738 P2d 1011, 1012 (1987) (citations omitted; emphasis in original).

Zumbusch concedes that she has no evidence under the first and second prongs of this test. However, she contends that she has presented sufficient evidence to create an issue of fact that the foreign substance was on the floor for a long enough time that Wal-Mart should have known it was there. This court agrees.

Two Oregon cases are particularly instructive on this issue. In *Audas v. Montgomery Ward, Inc.*, 79 Or App 718, 720, 719 P2d 1334, 1335 (1986), plaintiff slipped and fell after stepping in a liquid substance on the floor which "was either melted ice cream, a chocolate milkshake, or an Orange Julius." The trial court granted judgment n.o.v. in the face of testimony that the substance had "a kind of a glaze over the top of it," "was gooey," and had "areas around the puddle that looked almost dry * * * or crusted over." *Id*. The Court of Appeals reversed, relying on evidence that "the liquid substance had crusted over and had begun to dry." *Id* at 727, 799 P2d at 1335. "Although there was no expert testimony indicating the time that it would take for such crusting and drying to begin, the jury could reasonably infer, based on common knowledge, that [the] liquid substance would have to [have been] on the floor more than a short time to assume that appearance." *Id.*

9 – OPINION AND ORDER

In *Murno v. Richard's Food Ctr., Inc.*, 86 Or App 620, 622, 739 P2d 1097, 1098 (1987), decided a year after *Audas*, the Court of Appeals considered a case in which the plaintiff slipped on "grapes on the tile floor, some of which were 'compressed to the point that they were merely a slimy substance on the floor.'" The mere fact that the grapes were a "slimy substance on the floor" was not enough to indicate the length of time they had been there. *Id* at 623, 739 P2d at 1099. However, other testimony was sufficient to create a jury question as to whether the grapes had been on the floor long enough that the store should have known of it and taken measures to alleviate the dangerous condition, namely that there were "black marks through the area which appeared to be grapes which had been run over repeatedly by shopping carts," that plaintiff was not using a grocery cart, and that "those grapes that had not been run over were 'dirty as though they had been kicked around." *Id* at 624, 739 P2d at 1099.

These cases exemplify the distinction explained in a more recent case decided by the District of Maryland:

> [T]here is a substantive and logical difference between the cases wherein the condition of a foreign substance, by its nature, supplies clues as to how long it has been in place and those which do not. The cases [in which the condition of the substance raises no inference as to how long it has been there] simply do not dictate a general rule that under no circumstance does the condition of a foreign substance raise an inference as to how long it has been at the place that it is found.

*Kurtz v. Wal-Mart Stores, Inc.*, 338 F Supp2d 620, 621 (D Md 2004).

Citing *Audas* and two other cases, the court determined that plaintiff's testimony "that the spill on which she slipped had begun to dry at the edge is at least some evidence from which a reasonable inference could be drawn that the liquid had been on the floor a sufficient length of time for a person under a duty of care to discover it to have done so." *Id* at 620-21, citing *Audas*, 79 Or App at 720, 719 P2d at 1335 (substance was "gooey, had a glaze over the top and was

10 – OPINION AND ORDER

crusted over"), *Smith v. Wal-Mart Stores, Inc.*, 6 SW3d 829 (Ky 1999) (condition of blue liquid from blue slushy drink normally found in a semi-frozen state enough to create reasonable inference that it had remained on floor long enough for ice to melt), and *Foley v. F.W. Woolworth*, 293 Mass 232, 199 NE 739 (1936) ("consistency of vomit on a stairway, being partly dry and hard, warranted an inference that it had been on the stairway long enough to be discovered").

Likewise, Zumbusch has offered testimony sufficient to create the reasonable inference that the substance in which she slipped had been on the floor long enough to begin to dry: "Each small puddle appeared to be encircled by sandy dirt that had dried around the edges of each puddle." Zumbusch Aff., ¶ 1; *see also, id*, ¶ 2; Zumbusch Depo., pp. 117, 121-22, 126. Under *Audas*, *Murno*, and *Kurtz*, this testimony precludes summary judgment in favor of Wal-Mart.

## **ORDER**

Accordingly, Wal-Mart's Motion for Summary Judgment (docket # 15) is DENIED.

DATED April 17, 2013.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge
